**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| BILL RINGBAUER, ET AL. | * | CIVIL ACTION NO. 08-0115 |
| VERSUS | * | JUDGE MELANÇON |
| SID HEBERT, ET AL. | * | MAGISTRATE JUDGE HILL |

**REPORT AND RECOMMENDATION
ON RULE 12(b)(6) MOTION TO DISMISS**

Pending before the undersigned for report and recommendation is the Motion to Dismiss filed by defendants, Sheriff Sid Hebert (hereinafter referred to as "Hebert"), and Assistant Chief Ron Durand, Captain Randy Bouillion, Lt. Marion Borel, Sgt. John Carter, Sgt. Scott Clostio, Dep. Mike Lasalle, Dep. Bret Broussard, Dep. Paul Venable, Det. Ryan Turner, Sgt. Arthur Elmer, Sgt. Jay Shatlock, and Sgt. Brandon Hebert (collectively referred to hereinafter as "Deputies"), on May 12, 2009. [rec. doc. 48]. Plaintiffs, Bill Ringbauer, Debora Buczek, and John Clemens, filed opposition on May 27, 2009. [rec. doc. 51]. Defendants filed a reply on June 4, 2009. [rec. doc. 56]. The undersigned heard oral arguments regarding these motions on June 17, 2009, and took the matter under advisement  Appearing at the hearing were L. Clayton Burgess, representing plaintiffs, and Kenneth M. Henke and George Luce, representing defendants. For the reasons set out below, it is recommended that the motion be **DENIED in part and GRANTED in part**, as follows.

## Background and Procedural History

In their initial Complaint, filed on January 28, 2008, plaintiffs brought this civil rights action against one defendant, Hebert, the Sheriff of Iberia Parish, for an unlawful search and seizure allegedly conducted by Iberia Parish Sheriff's Deputies and also for the "custom or policy of failing to properly train police Deputies and/or inadequately supervise police Deputies." [rec. doc. 1, ¶¶ 16, 17]. In his Answer, Hebert asserted the defense of qualified immunity. [rec. doc. 3, ¶¶ 11, 12].

On May 20, 2008, the Court ordered plaintiffs to file a F.R.Civ.P. 7(a) reply to the qualified immunity defense pled by Hebert. [rec. doc. 7]. Plaintiffs filed a Rule 7(a) reply on June 6, 2008. [rec. doc. 8]. On June 17, 2008, Hebert filed a Motion to Dismiss on the grounds that plaintiffs' Rule 7(a) reply was insufficient. [rec. doc. 9]. Plaintiffs filed an opposition to the motion [rec. doc. 11], and Hebert subsequently filed a reply. [rec. doc. 18].

On July 16, 2008, a hearing on Hebert's first Motion to Dismiss was held in open court. After hearing the arguments of counsel, the undersigned recommended that the motion be denied, because the relief sought by Hebert under Rule 7(a) was procedurally unavailable to him. [rec. doc. 15]. The Judgment denying the motion was signed by Judge Melancon on August 20, 2008. [rec. doc. 19].

On August 26, 2008, plaintiffs filed their First Amending Complaint which named as parties defendant the following additional twelve (12) persons: Assistant Chief Ron Durand, Captain Randy Bouillion, Lt. Marion Borel, Sgt. John Carter, Sgt. Scott Clostio,

Dep. Mike Lasalle, Dep. Bret Broussard, Dep. Paul Venable, Det. Ryan Turner, Sgt. Arthur Elmer, Sgt. Jay Shatlock, and Sgt. Brandon Hebert. [rec. doc. 22]. Plaintiffs sued these Deputies in both their official and personal capacities. Plaintiffs allege that the Deputies are liable to plaintiffs both under the Fourth Amendment to the United States Constitution and under Louisiana law for unlawful arrest, unlawful search and seizure, and for negligence while acting within the course and scope of their employment with the Iberia Parish Sheriff's Office.

Plaintiffs further amended their original complaint to allege a Constitutional claim under 28 U.S.C. § 1983 against Sheriff Sid Hebert for the custom or policy of the Iberia Parish Sheriff's Department (hereinafter IPSD) of failing to properly train its deputies and/or inadequately supervise its deputies regarding police raids and search and seizure tactics. Plaintiffs further allege that Sheriff Hebert is vicariously liable for the acts of his deputies pursuant to Louisiana law. These claims are pled against Hebert in his official capacity as Sheriff of Iberia Parish [rec. doc. 22, ¶ 8].[1]

Factually, plaintiffs claim that on July 17, 2007, they were awakened at their apartment by the Deputies banging on their door. When Ringbauer walked outside, the Deputies allegedly pointed tasers[2] at him and yelled at him, saying that they were looking

---

[1] After a review of plaintiffs' complaint as amended, the undersigned finds that an individual capacity claim was never brought against Sheriff Hebert. Therefore, although this issue was briefed and argued at the hearing on June 17, 2009 where the undersigned noted his intention to recommend dismissal of such an individual capacity claim against Hebert, no such claim has ever been pled by plaintiffs.

[2] Complaint uses the word "lasers" but the undersigned assumes that plaintiffs are referring to "tasers."

3

for Apartment #2. Ringbauer told the Deputies that he lived in Apartment #4 and that #2 was downstairs, but the Deputies continued to point guns at him and told him to remain still or he would be shot. The Deputies then allegedly ordered all the plaintiffs out of the apartment, confiscated their cell phones, handcuffed them, and made them kneel on the ground. Plaintiff Debora Buczek was allegedly grabbed and thrown to the ground.

Once all plaintiffs were handcuffed and on the ground, the Deputies allegedly performed a thorough search of plaintiffs' apartment without probable cause or a search warrant. Afterward, plaintiffs were taken to the police station where they allegedly remained handcuffed in their underwear for two hours, after which they were released. No charges were ever filed against the plaintiffs.

Plaintiffs assert, based on alleged conversations with another IPSD deputy, that on the night of the incident, the Deputies were responding to a prank 911 call regarding a possible disturbance in Apartment #2. Plaintiffs contend that none of their cell phones were ever linked to the prank 911 call. Plaintiffs further contend that the apartment numbers are clearly visible on the doors of each apartment, so there should have been no confusion as to which apartment the Deputies were raiding.

Defendants filed their Answer to the Amended Complaint on December 1, 2008. [rec. doc. 40]. In their answer, defendants specifically aver that they are entitled to the defense of qualified immunity. [rec. doc. 40, p.2]. In their motion to dismiss, defendants argue that plaintiffs have failed to state an actionable claim in their complaint (as

amended, *see* rec. docs. 1 and 22). Defendants further assert that because defendants have answered discovery, plaintiffs should have amended their complaint to show more facts to support the claims asserted. In support of their motion to dismiss, defendants also assert that plaintiffs' allegations do not show that a Constitutional violation occurred under the particular facts alleged, or that defendants acted unreasonably in light of established law. [rec. doc. 48, p.6]. Defendants further allege that plaintiffs' personal capacity claims should be dismissed because plaintiffs have failed to respond to the qualified immunity defense with particularity. [rec. doc. 48, p.5].[3]

In their opposition memorandum, plaintiffs assert that their personal capacity claims have been pled with enough particularity to survive defendants' qualified immunity defense. Specifically, plaintiffs allege that the paragraphs in their complaint (as amended) which describe the incident[4] are factually sufficient to support plaintiffs' civil rights claims against the Deputies in their personal capacities, for violating plaintiffs' Fourth Amendment Constitutional rights against unlawful search and seizure. (rec. doc. 51, p.5). Plaintiffs further allege that defendants' discovery responses have been vague and unresponsive; thus, plaintiffs have pled the facts of the case with as much particularity as possible given the discovery made available to plaintiffs thus far.

---

[3] As the undersigned noted at the hearing on this motion, defendants' assertion has no merit as to the Court's Order requiring a Rule 7(a) reply. The Court's order was premature and unnecessary; thus, contrary to defendants' assertion, this Court did not make a determination that plaintiffs' complaint was factually insufficient to rebut the qualified immunity defense. At that point in time, there were no personal capacity claims being made by plaintiffs.

[4] *See* rec. doc. 1, ¶¶ 9, 10 and rec. doc. 22, ¶¶ III, IV, V, and VI.

Additionally, plaintiffs assert that their allegations clearly show that the Deputies actions were not objectively reasonable because (a) the Deputies knew that they were searching the wrong apartment, and (2) the Deputies had no probable cause to search the apartment or seize and detain the plaintiffs. (rec. doc. 51, p.9). Finally, plaintiffs contend that under the Rule 12(b)(6) standard, plaintiffs do not have to prove their case, but need only show that they have sufficiently alleged facts to support a claim against defendants.

*Standard of Review*

**Motion to Dismiss Standard**

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (*citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied, sub. nom., Xavier University of La. v. Travelers Cas. Prop. Co. of America*, 128 S.Ct. 1230 (U.S. February 19, 2008)). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ibid.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citation and footnote omitted). A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

6

to relief." *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999) (*quoting Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

While detailed factual allegations are not required, a claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940, 77 U.S.L.W. 4387 (May 18, 2009). Plaintiffs' pleadings which amount to mere legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

*Case law and Analysis*

**Qualified Immunity/Federal Law Claims**

Government officials are entitled to qualified immunity for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, qualified immunity is available when a reasonable official would not have known that his actions would violate a constitutional right that was clearly established at the time of the incident. *Harlow*, 102 S.Ct. at 2738. Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208,

7

131 L.Ed.2d 60 (1995); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

Claims of qualified immunity require a two-step analysis. First, the court must determine whether the plaintiff has alleged that defendants committed a constitutional violation under current law. *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003); *Hall v. Thomas*, 190 F.3d 693, 696 (1999) (*citing Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)).[5] If there is no constitutional violation, the court's inquiry ends. *Mace,* 333 F.3d at 623.

If plaintiffs properly plead that they have sustained the deprivation of a constitutional right, the court must then decide whether defendants' actions were objectively unreasonable in light of "clearly established" law at the time of the alleged violation. *Hall,* 190 F.3d at 696 (*citing Siegert*, 500 U.S. at 231-232). This "second prong" of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident*;* and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Estate of Sorrells v. City of Dallas,* 45 Fed.Appx. 325 (5th Cir. 2002) (*quoting Hare v. City of Corinth, Miss.,* 135 F.3d 320, 326 (5th Cir.1998)). The analysis "generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were clearly

---

[5] *See also Club Retro, L.L.C. v. Hilton et al.*, 568 F.3d 181, 194 (5th Cir. 2009).

established at the time [the action] was taken . . ." in light of the information the Deputies possessed. *Anderson*, 483 U.S. at 639-640; *Wagner v. Bay City, Texas*, 227 F.3d 316, 321 (5th Cir. 2000) (*citing Anderson*, 483 U.S. at 640). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Club Retro, L.L.C. v. Hilton et al.*, 568 F.3d 181, 194 (5th Cir. 2009) (*quoting Kinney v. Weaver*, 367 F.3d 337, 349050 (5th Cir. 1994) (en banc) (further citation omitted.)

Thus, even if it is determined that an official's conduct was unconstitutional, that is, that the defendants violated plaintiffs' clearly established constitutional rights, the court must nevertheless decide whether the conduct was "objectively reasonable" and if so, the defendants may still be entitled to qualified immunity. *Kipps v. Callier,* 197 F.3d 765, 768-69 (5th Cir. 1999) (citations omitted). "Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff." *Wagner*, 227 F.3d at 321 (*quoting Gutierrez v. City of San Antonio,* 139 F.3d 441, 445 (5th Cir.1998) (*citing Anderson,* 483 U.S. at 641).

"The qualified immunity standard gives ample room for mistaken judgments . . . ." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Thus, if Deputies of reasonable competence could disagree . . . immunity should be recognized." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

1. **Individual Capacity Claims**

   **Deputy Defendants**

   Plaintiffs' § 1983 claims seeking damages from the Deputies in their individual capacities are subject to the affirmative defense of qualified immunity. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). When defendants invoke qualified immunity, the burden shifts to the plaintiffs to demonstrate the inapplicability of the defense. *Ibid.* Claims of qualified immunity require a two-step analysis, as described above.

   The Deputies assert the defense of qualified immunity in response to plaintiffs' claims of unlawful arrest and unlawful search and seizure of plaintiffs' apartment. "Thus, plaintiffs must allege facts permitting an inference that the [Deputies] lacked arguable (that is, reasonable but mistaken) probable cause" for their actions. *Club Retro*, 568 F.3d at 207 (other citations omitted). The facts as pled by plaintiffs suggest the possibility that the Deputies knew at the time of the incident that they were searching the wrong apartment. The facts as pled also suggest that the Deputies knew or should have known that they had no probable cause to detain the plaintiffs. Moreover, it is plausible that the Deputies were aware that their actions during the incident might violate the plaintiffs' clearly-established Fourth Amendment rights to be free from unreasonable seizure, false arrest and unlawful search and seizure.

The validity of the search depends, in large part, on whether the Deputies' failure to realize that they were searching the wrong apartment was objectively understandable and reasonable at the time.[6] The facts as pled by plaintiffs in this case could lead reasonable minds to differ on whether the search and seizure was a "reasonable mistake."

Thus, the undersigned finds that plaintiffs' personal capacity claims against the Deputies have been pled with enough particularity to survive the Deputies' qualified immunity defense at this stage of the proceedings. Plaintiffs should be afforded the ability to utilize the discovery process in order to develop the facts further in this case. Therefore, dismissal of the claims against the Deputies in their individual capacities is inappropriate at this stage of the litigation, and should be denied.

2. **Official Capacity Claims**

A suit against an officer (or, as in this case, a deputy sheriff) in his official capacity is the equivalent of a suit against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Brandon v. Holt*, 469 U.S. 464 (1985); *Hafer v. Melo*, 112 S.Ct. 358 (1991); *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)[7]; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir.

---

[6] See *Maryland v. Garrison,* 480 U.S. 79, 88, 107 S. Ct. 1013, 1018, 94 L.Ed.2d 72 (1987) (*citing Hill v. California,* 401 U.S. 797, 91 S. Ct. 1106, 28 L.Ed.2d 484 (1971). Defendants cite *Garrison* in their Reply Brief filed June 4, 2009. [rec. doc. 56].

[7] The Supreme Court in *McMillian* explained that:
> [A] suit against a governmental officer "in his official capacity" is the same as a suit " 'against [the] entity of which [the] officer is an agent,' " *(citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (*quoting Monell v. New York City Dept. of Social Servs*., 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978)), and that victory in such an

1999), *rev'd in part,* 336 F.3d 363 (5th Cir. 2003). Thus, such a claim requires *Monell* proof of an official policy[8] or custom[9] as the cause of the constitutional deprivation. *Turner v. Houma Municipal Fire & Police Civil Service Board*, 229 F.3d 478, 483 fn 10 (5th Cir. 2000) (*citing Monell v. Department of Social Services*, 436 U.S. 658 (1978)).[10]

---

"official-capacity" suit "imposes liability on the entity that [the officer] represents," *(citing Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)).

*McMillian,* 520 U.S. at 785 n. 2, 117 S.Ct. 1734.

[8]"An official policy, for purposes of §1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking Deputies or by an official to whom the lawmakers have delegated policy-making authority.'" *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (en banc).

[9] Courts have defined custom as a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (*citing Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984)); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir. 1990)(en banc). A singular incident is insufficient. *See Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir. 2001) (*citing Snyder v. Trepagnier,* 142 F.3d 791, 798-99 (5th Cir.1998), and *Belt*, 828 F.2d at 304-305); *Board of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

[10] In *Monell,* the Court held that local governmental entities may be sued under §1983. However, they may not be held vicariously liable under the doctrine of *respondeat superior*. Thus, a governmental entity may not be held liable merely because it employs a tortfeasor. Liability must be based upon allegedly unconstitutional conduct which "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's Deputies...[or is] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision-making channels." *Id*. at 690-91.

**A. Sheriff Hebert**

Plaintiffs assert an official capacity claim against Sheriff Hebert in their amended complaint, stating that Hebert is responsible for the "IPSD's custom or policy of failing to properly train its Deputies and/or inadequately supervise its police Deputies regarding police raids and searching and seizing persons and/or their property." [rec. doc. 22, ¶ 8]. Defendants correctly note that plaintiffs cannot prove an official capacity claim merely by invoking the "boilerplate" *Monell* language. [rec. doc. 48, p. 10]. To successfully recover under a official capacity claim against Hebert, plaintiffs must ultimately prove with specificity the particular official policies of the IPSD which allegedly resulted in the constitutional violation complained of by plaintiffs. There must be evidence shown of a persistent, widespread practice or pattern for purposes of imputing official capacity liability.

However, plaintiffs argue that they have not been afforded sufficient discovery responses so as to have the ability to make a determination regarding the policies and customs of the IPSD. Until defendants provide plaintiffs with responsive discovery documents, plaintiffs argue that they are unable to plead additional facts with any more specificity regarding what happened, and which Deputies did what and to whom during the incident at issue.

While acknowledging that plaintiffs face a heavy burden of proof to ultimately succeed on their official capacity claim against the Sheriff in this case, the undersigned

13

finds that plaintiffs have pled sufficient facts at this time to allow discovery to proceed. The plaintiffs may not be able to prevail on this issue at trial, indeed their claim may not survive a well-documented motion for summary judgment, but they are entitled, on this record as established thus far, to try to do so. Accordingly, dismissal of the official capacity claim against the Sheriff is not appropriate at this juncture, and therefore should be denied.[11]

### B. All Other Deputy Defendants

Plaintiffs' counsel admitted at the hearing that the official capacity allegations against the Deputies were a legal "stretch." Plaintiffs have not asserted that any of the Deputies were responsible for implementing policies or procedures of the IPSD on the night of the incident in question. Plaintiffs do not assert, and the undersigned finds it implausible, that any one of the Deputies was an "official policy maker" under the standard as set forth in *Brown* and *Bennett*.[12] Thus, the undersigned finds that it appears beyond doubt that the plaintiffs can prove no set of facts in support of their official capacity claims against the other Deputies which would entitle plaintiffs to relief. Accordingly, the official capacity claims against the Deputies should be dismissed.

---

[11] Of course, nothing in this Report and Recommendation addresses Hebert's potential *respondeat superior* liability under the state law claims. Those claims remain pending.

[12] *See* footnote 10, above.

*Conclusion*

For the above-stated reasons, the undersigned recommends that the motion be **DENIED IN PART AND GRANTED IN PART** as delineated below**:**

1) the motion should be granted on the official capacity claims against the Deputies, and those claims should be **DISMISSED WITHOUT PREJUDICE**;

2) the motion should be **DENIED** on the official capacity claim against Sheriff Hebert; and

3) the motion should be **DENIED** on the individual capacity claims against the Deputies.

**IT IS SO RECOMMENDED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME**

**FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 13th day of July, 2009, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE